No. 32,658

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF WILSON, *Appellee*, v. BEN S. HUDSON, doing business as THE FREDONIA DAILY HERALD, *Appellant*.

(54 P. 2d 994)

Opinion filed March 7, 1936.

*J. L. Stryker,* of Fredonia, and *T. R. Evans,* of Chanute, for the appellant.

*Charles H. Carpenter,* county attorney, and *W. H. Edmundson,* both of Fredonia, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action to recover an amount of overcharges which defendant is alleged to have exacted from Wilson county for public printing.

In summary the material facts were these:

The defendant, Ben S. Hudson, publishes a newspaper in Fredonia and operates a job-printing establishment in connection therewith. One Austin V. Butcher publishes a newspaper in Altoona and operates a job-printing establishment therewith. A third newspaper establishment, which figures but slightly in this lawsuit, is conducted in Buffalo. All these places are in Wilson county.

On April 8, 1931, the board of county commissioners of Wilson

county awarded a contract for the county printing to Hudson, Butcher, and to the unnamed publisher of the Buffalo *Blade*. By its terms the three newspapers concerned were designated as "official county papers" for a period of two years. Other terms of the contract were as follows:

"That all legal publications, or advertising, commonly known as county printing, shall be published equally in these newspapers throughout the life of this contract.

"That the Altoona *Tribune* and the Fredonia *Daily Herald* shall be designated as county printers and shall supply the county named· with all needed printed supplies as it requires *for a period of two years*.

"Parties of the second part hereby contract and agree to charge for all legal publications, or advertising, commonly known as county printing, the full legal rate provided by law, divided 45 percent each to the Altoona *Tribune* and the Fredonia *Daily Herald* and 10 percent to the Buffalo *Blade,* that the cost to Wilson county shall not exceed the legal rate provided by law.

"That a just, fair and reasonable rate shall be charged by parties of the second part for supplies and printed supplies."

Pursuant to this contract defendant published all official county matters required of him, and printed and supplied whatever stationery was requisitioned by the county. For these services and supplies defendant presented monthly itemized bills which were examined and approved by the county attorney and paid by the county board at the monthly meetings. This course of dealing between defendant and the county continued from the date of the execution of the contract, April 8, 1931, until December, 1932, or longer. The record warranted an inference that the contract of April, 1931, was virtually a renewal of an earlier contract of the same general character, because some of the alleged overcharges for which the county sought a recovery antedated that contract for three months or more.

On January 9, 1933, the county board instituted an audit of the county printing. This was completed on March 6, 1933. It showed a considerable aggregate of overpayments to defendant which became the subject of correspondence between these litigants. An itemized schedule of plaintiff's claim together with the correct legal charges and the actual sums paid to defendant therefor was presented to him on March 20, 1933. Whether this itemized schedule was intended to serve the purpose of a demand by the county for repayment of the alleged excess charges is not clear. In plaintiff's petition, which pleaded the foregoing facts, it was alleged that demand had been made on defendant that such excess payments be refunded. Plaintiff's action was filed on November 28, 1933.

Defendant filed a demurrer to plaintiff's amended petition, raising the following legal questions:

"(1) That said amended petition shows on its face that it does not state facts sufficient to constitute a cause of action . . .

"(2) That said petition shows on its face that the plaintiff's action, as to all of the items alleged in their exhibit B, except the items of November, 1932, and December, 1932, is barred by the statute of limitations of the state of Kansas, the same being the fourth subdivision of section 60-306 R. S. of Kansas for the year 1923.

"(3) That the petition shows on its face that several causes of action are improperly joined."

This demurrer was overruled and defendant appeals, first directing our attention to the pertinent statute under which the action was brought. It reads:

"All fees, costs or other allowances, or any fees obtained from or allowed against any county, when the same are not authorized by law, and not refunded on demand, may be recovered back in a civil action, in the name of the proper county, in any court of competent jurisdiction; and on the rendering of the judgment in any such case, the justice or the court rendering the same shall add one hundred percent to the same, to go to the county, and also a fee of ten dollars if in a justice's court and twenty-five dollars if in the district court, to go to the county attorney or other person prosecuting the same." (R. S. 19-232.)

Another paragraph of statute to which defendant refers is the fourth subdivision of R. S. 60-306, which reads:

"Civil actions, other than for the recovery of real property, can only be brought within the following periods, after the cause of action shall have accrued, and not afterwards:

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"*Fourth.* Within one year. An action . . . upon a statute for penalty or forfeiture, except where the statute imposing it prescribes a different limitation."

Upon the text of these quoted provisions of statute, defendant argues that virtually all the items of alleged overpayments were barred when this action was begun. Let us see about this. The contract under which the defendant's services and charges were performed and paid for was entered into and dated April 8, 1931. Since the county's case is founded on that contract, it seems rather clear that the items of alleged overcharges for January, February and March, 1931, should be excluded from the amount sued for. They were not exacted under this contract. As to all the other items, it is not shown when the demand was made, but it must have

been at no later date than November 28, 1933, when the action was filed. The last excess items on the schedule were paid in December, 1932, so the action was begun within one year—if the monthly payments to defendant may be properly denominated as items of a running account. In the brief of appellee it is stated that the contract expired on December 31, 1932, which may be correct, but the contract itself recited that it was made on April 8, 1931, and that it was to endure for two years, which would be until April 8, 1933. So if the demand on defendant to refund the alleged excess payments be deemed to have been made on the date the action was begun, it would appear that it was within time, unless the presentation, allowance and payment of each month's itemized vouchers constituted an independent account stated. If so regarded, all overpayments made more than a year prior to the county's demand for their refunding by defendant would be barred under the statutory provisions quoted above. The "demand" was a condition precedent to the maintenance of the action authorized by R. S. 19-232; it would not accrue until the demand was made and rejected; and the *fourth* section of the statute of limitations quoted above would govern the time in which it could be begun—one year.

As we view the action, however, it is essentially based on a breach of the contract, the gist of which was that for a space of two years defendant would perform certain services and furnish certain supplies to the county—county printing at forty-five percent of legal rates, and supplies and printed supplies at "a just, fair and reasonable rate."

The contract was entire; it was only for the convenience of the parties that bills incurred were paid monthly. Those monthly payments were made on contract account and if more than the legal rates under the contract were exacted and paid, the statute (R. S. 19-232) clearly gave the county the right of action it brought against this defendant. We attach no particular significance to the fact that the county attorney scrutinized the monthly bills before they were allowed and paid.

Since the demurrer admitted the truth of all material allegations of plaintiff's petition, and the petition alleged the contract was to endure for two years (until April 8, 1933) plaintiff's action begun on November 28, 1933, could not be barred under any construction of the pertinent statutes.

Touching the point of misjoinder urged by appellant, this court

holds that the petition stated but one cause of action—based on the contract, its breach, and the statutory remedy.·

In conclusion it will be noted, of course, that the items of alleged overpayments made prior to April 8, 1931, should be excluded from the aggregate amount which the county may eventually recover if it successfully maintains this action, and with that understanding the judgment is affirmed.

WEDELL, J., not sitting.